[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10482

_____

D.C. Docket No. 1:13-cr-20405-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH SYMINGTON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 25, 2015)

Before MARTIN and DUBINA, Circuit Judges and RODGERS,[*] District Judge.

DUBINA, Circuit Judge:

---

[*] Honorable Margaret C. Rodgers, Chief United States District Judge for the Northern District of Florida, sitting by designation.

Appellant Joseph Symington ("Symington") appeals his conviction and 15-year mandatory minimum sentence, imposed pursuant to the Armed Career Criminal Act ("ACCA"), after he pleaded guilty to violating 18 U.S.C. §§ 922(g) and 924(e), for being a convicted felon in possession of a firearm and ammunition. Symington argues on appeal that the district court lacked the authority to sentence him beyond the ten-year maximum sentence agreed to in his written plea agreement because it explicitly stated that he would not be subject to an enhanced sentence under the ACCA. We conclude that the district court was required to sentence Symington under the ACCA; nevertheless, we must vacate and remand Symington's conviction and sentence because the district court failed to comply with Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11") by not permitting Symington to withdraw his guilty plea.

## I.    BACKGROUND FACTS

A federal grand jury in the Southern District of Florida indicted Symington for one count of possession of a firearm and ammunition by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count One), and one count of possession of cocaine, in violation of 21 U.S.C. § 844(a) (Count Two).

Symington entered into a written plea agreement with the government in which he pleaded guilty to Count One and the government dismissed Count Two.

2

Both parties agreed that Symington was not subject to the mandatory minimum penalties found in the ACCA because Symington's 2008 conviction for fleeing and eluding was a misdemeanor, not a felony. Specifically, the agreement stated in part that "[the government] and the defendant further agree that the defendant is not subject to the mandatory minimum penalties associated with Title 18, United States Code, Section 924(e)." Doc. 27 ¶ 2. Symington understood that the district court would determine his sentence partially by relying on the findings contained in the presentence investigation report ("PSI"). He knew that the district court could sentence him to "any sentence within and up to the statutory maximum authorized by law for the offense," and that he could not "withdraw [his] plea solely as a result of the sentence imposed." *Id.* ¶ 3. Symington acknowledged that the district court could impose a maximum term of imprisonment of ten years. *Id.* ¶ 4.

The government recommended that Symington's guideline level be reduced by 2 levels, pursuant to U.S.S.G. § 3E1.1(a), based upon Symington's acceptance of responsibility. Further, if his guideline level was greater than 16, the government agreed to file a motion for another 1-level reduction, pursuant to U.S.S.G. § 3E1.1(b), based upon his assistance to authorities. *Id.* ¶ 7. The government also agreed to "recommend that [Symington] be sentenced at the low

3

end of the calculated advisory guidelines." *Id.* at ¶ 8. Symington stated that he understood that "any recommendation that the government ma[de] to the Court as to sentencing" was not binding on the court, and he could not withdraw his plea should the court not accept a sentencing recommendation made by either or both parties. *Id.* ¶ 9.

At Symington's change of plea hearing, the district court told Symington twice that it could sentence him to a maximum term of imprisonment of ten years, asking Symington if he understood that he could "never receive a term of imprisonment greater than ten years?" Doc. 46 at 11–13. Symington confirmed both times that he understood the maximum sentence he faced. After determining that Symington had prior convictions, the court asked whether Symington qualified as any type of special offender, and the government replied that he did not. Nevertheless, the court directed Symington to consult with his attorney regarding a possible special offender classification because "if [he] were to be classified as some kind of a special offender, or a career offender, or an armed career offender then that would greatly, greatly increase the guideline range that would apply to [him]." *Id.* at 13. Symington indicated that he understood that if he were to be classified as a type of special offender, which he would not know until the PSI's completion, then he would not be permitted to withdraw his guilty plea.

4

The district court then asked Symington if he had read and understood the agreement in its entirety.  Symington replied in the affirmative to both and confirmed that he had no questions about the plea agreement.  The district court acknowledged that it was not bound by the plea agreement and it could impose any sentence authorized by law regardless of the plea agreement.  Symington confirmed that he understood and pleaded guilty to Count One.  The district court accepted the plea, concluding that Symington "underst[ood] the nature of the charges against him, appreciate[d] the consequences of pleading guilty, underst[ood] the possible penalties, and fully underst[ood] his rights."  *Id.* at 22–24.

According to the PSI, officers from the Hialeah Police Department Community Response Team, who were looking for a man wanted by the Auto Theft Unit, approached a car containing a passenger matching the description of the wanted man.  Symington was a passenger in the car.  Smelling marijuana as they approached, the officers ordered the passengers to make their hands visible and not to move.  After Symington dropped a marijuana cigarette on the floorboard, the officers ordered him out of the car, patted him down, and found a .38 caliber revolver, which had been reported stolen, in his sweatshirt pocket.  Inside a Coach eyeglass case that Symington carried, officers also found one

5

plastic baggie containing cocaine and two baggies containing a total of nine Xanax pills.

In preparing the PSI, the probation officer initially calculated a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2); however, because Symington possessed a stolen firearm, the offense level increased by two levels, pursuant to § 2K2.1(b)(4)(A).  Additionally, his offense level increased because Symington qualified as an "armed career criminal" under § 924(e).  *See* U.S.S.G. § 4B1.4(b)(3)(B).  The probation officer reduced the offense level by three levels for Symington's acceptance of responsibility and assistance to authorities, pursuant to U.S.S.G. § 3E1.1(a) and (b), which yielded a total adjusted offense level of 30.

The record demonstrates that Symington had numerous prior convictions, giving him a criminal history score of nine and classifying him with a criminal history category of IV which, along with a total offense level of 30, resulted in an advisory guideline range of 135 to 168 months' imprisonment.  However, pursuant to U.S.S.G. § 5G1.1(c)(2), because Symington qualified as an armed career criminal, his guideline sentence could not be less than § 924(e)'s statutorily prescribed minimum sentence of 15 years, or 180 months.  The PSI further noted that despite the parties stipulation in the plea agreement that Symington did not qualify as an armed career criminal, he did in fact qualify as one based on three of

6

his prior convictions:  (1) aggravated fleeing or attempting to elude a law enforcement officer in 2004; (2) aggravated battery in 2005; and (3) fleeing or attempting to elude a law enforcement officer in 2008.

Subsequently, Symington and the government jointly filed a motion to continue sentencing based on a mutual mistake in Symington's plea agreement—that he was not subject to the ACCA's mandatory minimum sentencing enhancement.  Initially, the parties thought his 2008 conviction for fleeing or attempting to elude a law enforcement officer was a misdemeanor, but research later revealed that it was in fact a felony.  As a result of this discovery, they argued, Symington might qualify as an armed career criminal, and it might be necessary for him to withdraw his plea.  Both parties requested additional time for research and investigation into the matter, but the district court denied the joint motion.

Symington then filed objections to the PSI, arguing that his 2008 conviction for fleeing or attempting to elude a law enforcement officer was not a felony or, alternatively, if it was a felony, it was not a "violent felony" under the ACCA.  The government filed no objections to the PSI.

At Symington's first sentencing hearing, he moved to withdraw his guilty plea.  He argued that once the probation officer determined that his 2008 fleeing

7

and eluding conviction was a felony, thereby subjecting him to the ACCA sentencing enhancement, his plea agreement became invalid because it stated the contrary.  Because the district court did not advise Symington during his plea colloquy that he could face a 15-year mandatory minimum sentence and a maximum sentence of life imprisonment, the government did not object to Symington withdrawing his guilty plea.  Thus, Symington no longer objected to his classification of the 2008 conviction as a felony.

The district continued Symington's sentencing hearing stating that "[b]ecause Symington qualifies as an armed career criminal, the government and the defendant have attempted to enter into an agreement that the law does not permit." *Id* at 25.  The district court reasoned that the parties were attempting to bind it to the agreement that Symington could not be sentenced as an armed career criminal.

At Symington's second sentencing hearing, the district court confirmed with Symington that he wished to withdraw his guilty plea.  Symington explained that he sought to withdraw his plea based on representations made in the plea agreement and by his attorney that he would not qualify as an armed criminal under the ACCA.  The district court denied Symington's motion to withdraw his guilty plea and sentenced him to 180 months' imprisonment to comply with the

8

mandatory minimum sentence prescribed by the ACCA.  Symington then perfected

this appeal.

## II.    ISSUES

(1) Whether the district court erred in sentencing Symington in accordance with the ACCA, beyond the 10-year maximum sentence bargained for by the parties in the written plea agreement.

(2) If the answer to question 1 is "no," whether the district court abused its discretion by denying Symington's motion to withdraw his guilty plea prior to sentencing.

(3) Whether the district court plainly erred in enhancing Symington's sentence under the ACCA based on prior convictions that were not charged in his indictment or proven beyond a reasonable doubt to a jury.

(4) Whether the district court plainly erred in finding that Symington's prior conviction for fleeing or attempting to elude a law enforcement officer, in violation of Florida Statute § 316.1935(1), qualifies as a violent felony under the ACCA.

## III.    STANDARDS OF REVIEW

This court reviews an alleged breach of a plea agreement de novo.  *See*

*United  States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004).

We review a district court's denial of a motion to withdraw a guilty plea for

an abuse of discretion.  *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir.

2006).

9

## IV.    ANALYSIS

### A.    Authority to Sentence Symington Beyond the Ten-Year Maximum Sentence Agreed to in Written Plea Agreement

Symington argues that the district court lacked the authority to sentence him beyond the ten-year maximum sentence agreed to in his written plea agreement, which explicitly stated that his prior convictions did not qualify as predicate offenses for an enhanced sentence under the ACCA.  Symington maintains that after accepting his plea agreement, thereby becoming bound by the agreement not to apply the ACCA enhancement, the district court could impose no greater than a ten-year maximum sentence.  Thus, Symington argues that the district court erred in sentencing him to 15 years' imprisonment rather than the ten years agreed upon in his plea agreement.

The government responds that Symington cannot be sentenced without the ACCA sentencing enhancement because, as Symington concedes, he qualifies for the mandatory enhancement.  Generally, this court may remedy the breach of a plea agreement by ordering specific performance of the agreement, but that is not the proper remedy here.  As the government argues, enforcing the agreed upon ten-year sentence in the plea agreement would result in the imposition of an illegal sentence because application of the ACCA is mandatory when a defendant meets the statutory requirements.

10

Our circuit has not addressed whether a district court is bound by a plea agreement that requires it to impose an illegal sentence. We find guidance in decisions of our sister circuits. In *United States v. Moyer*, the defendant pleaded guilty under § 922(g), and the government agreed in the defendant's plea agreement not to seek an enhanced sentence under the ACCA. 282 F.3d 1311, 1314 (10th Cir. 2002). Despite the PSI's clear indication that Moyer qualified for the ACCA's 15-year mandatory minimum sentence, the district court determined that it was bound by the government's agreement not to apply the ACCA and, instead, sentenced the defendant to ten years' imprisonment. The Tenth Circuit reversed Moyer's sentence, explaining that his ten-year sentence was "an illegal sentence" because the court did not apply the 15-year mandatory minimum sentence under § 924(e)(1). *Id.* at 1318. The court held that "the application of § 924(e)(1) is not subject to governmental waiver or prosecutorial discretion. Thus, notwithstanding the commitment made by the government in the plea agreement, the district court erred when it sentenced [the defendant] without applying § 924(e)(1)." *Id.* at 1318–19 (citation omitted).

Similarly, in *United States v. Davis*, the defendant pleaded guilty under § 922(g), and the plea agreement stated that he faced a maximum penalty of ten years' imprisonment. 689 F.3d 349 (4th Cir. 2012). During his plea hearing, both

11

the government and the district court stated the same maximum penalty. The PSI, however, recommended Davis be sentenced under the ACCA, and the district court agreed, sentencing him to a 15-year mandatory minimum sentence. Davis filed a petition under 28 U.S.C. § 2255 challenging his sentence.

In *Davis*, unlike Symington's case, the government made no binding promise that the ACCA would not apply. On review, the circuit court determined that "Davis's claim for breach fails insofar as he seeks the benefit of a promise that the government never made." *Id.* at 353. The circuit court, nonetheless, held that even if the government had breached a promise for a particular sentence, the district court could not be bound by that promise because the ACCA was mandatory. The circuit court noted that "the district court could not have imposed a sentence that contravened the applicable statute." *Id.* at 354. Accordingly, the circuit court had "no authority to order the district court to impose an unlawful sentence." *Id.* at 354.

Although not directly on point, we find the analysis in these cases persuasive. Accordingly, we hold that the district court did not err in sentencing Symington in accordance with the ACCA because the ACCA is mandatory, and the district court lacked the authority to impose the unlawful sentence contained in the plea agreement.

12

### B.    Motion to Withdraw Guilty Plea

On appeal, the government acknowledges that the district court abused its discretion in denying Symington's motion to withdraw his guilty plea.  It agrees with Symington that his conviction should be vacated and his plea withdrawn.

"Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea."  *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000).  That inquiry "must address three core concerns underlying Rule 11:  (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea."  *Id*. (internal quotation marks omitted).  The failure to address any of these three core concerns, such that a defendant's substantial rights are affected, requires automatic reversal of the conviction and the opportunity to plead anew.  *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996).

Under Rule 11, the district court must inform the defendant of any possible maximum penalty and any mandatory minimum penalty he will be subjected to by pleading guilty, and the district court must ensure that the defendant understands the sentencing range.  Fed. R. Crim. P. 11(b)(1)(H)–(I).

Under the ACCA, a defendant who is convicted under § 922(g) for being a convicted felon in possession of a firearm faces a maximum sentence of ten years' imprisonment.  18 U.S.C. §§ 922(g), 924(a)(2).  However, the ACCA raises the maximum sentence to life imprisonment and imposes a 15-year mandatory minimum sentence for defendants who have three prior convictions for violent felonies.  § 924(e)(1); *see United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993).  Recently*,* this court determined that it was plain error for a plea agreement to mistakenly provide, and a district court to erroneously state, that the maximum penalty for a defendant's § 922(g)(1) conviction was ten years' imprisonment when the defendant actually faced a 15-year mandatory minimum sentence under the ACCA.  *United States v. Gandy*, 710 F.3d 1234, 1240–41 (11th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S. Ct. 304 (2013).  This court held, however, that the error did not affect the defendant's substantial rights because the district court gave the defendant the opportunity to withdraw his guilty plea prior to sentencing, but he declined.  *Id.*

As Symington and the government agree, the district court abused its discretion by denying Symington's motion to withdraw his guilty plea.  *See Brehm*, 442 F.3d at 1298.  Once the government and Symington brought to the district court's attention its failure to comply with Rule 11, the court should have

14

permitted Symington to withdraw his guilty plea. *See Gandy*, 710 F.3d at 1240–41.

Accordingly, under the totality of the circumstances surrounding Symington's plea, we conclude that the district court abused its discretion by denying Symington's motion to withdraw his plea after he presented a "fair and just reason" to support his motion. *See Brehm*, 442 F.3d at 1298. Accordingly, we are compelled to vacate Symington's conviction and sentence and remand this case with directions to the district court that it permit Symington to withdraw his guilty plea.

Because we are vacating Symington's conviction and sentence and remanding this case for further proceedings consistent with this opinion, we need not reach the third and fourth issues presented in this appeal.

VACATED AND REMANDED.