[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11367
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cr-00257-AKK-JHE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO MOTUTO SILVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 14, 2018)

Before WILLIAM PRYOR, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Sergio Silva appeals his convictions that were entered on pleas of guilty to conspiring to distribute and possess with the intent to distribute 5 kilograms or more of cocaine and 50 grams or more of methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), attempting to possess with the intent to distribute 50 grams or more of cocaine, *id.* §§ 846, 841(a)(1), (b)(1)(B), (b)(1)(C), and possessing with intent to distribute 50 grams or more of methamphetamine, *id.* § 841(a)(1), (b)(1)(A); 18 U.S.C. § 2. Silva argues, for the first time on appeal, that his guilty pleas were not entered knowingly and voluntarily because he was unaware that he would receive a sentence enhancement for possessing a firearm, United States Sentencing Guidelines Manual § 2D1.1(b)(1) (Nov. 2016). After careful review, we affirm.

Silva entered a written agreement to plead guilty to three drug offenses in exchange for the dismissal of one additional drug charge. The written agreement stated that the district court would find facts to calculate Silva's advisory sentencing range under the Sentencing Guidelines, the sentencing recommendation of the government was not binding on the district court, and the decision about what sentence to impose rested in the discretion of the district court. The agreement also provided that the plea agreement would not prohibit the district court from considering additional factors to fashion an appropriate sentence.

2

During the change of plea hearing, Silva confirmed that he understood he faced a sentencing range of 10 years to life imprisonment for his conspiracy and for his possession of methamphetamine offenses, *see* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); 18 U.S.C. § 2, and a sentencing range of 5 to 40 years of imprisonment for attempting to possess cocaine, *see* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), (b)(1)(C). When the district court asked whether there were "any enhancements in this case," the prosecutor responded, "No enhancements."

Silva acknowledged that he had conferred with his attorney about the Sentencing Guidelines, that his sentencing range would not be determined until sentencing, and that the sentence imposed might differ from the estimate provided by his attorney:

> THE COURT: Any sentence that I give you will be subject to the requirements of the United States Sentencing Guidelines but the Court may go above or below those guidelines under some limited circumstances. Have you and your lawyer talked about the sentencing guidelines and how they may apply in your case? Have you talked about sentencing guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you understand that I will not be able to determine your sentence under the guidelines under several months down the road after I have had some additional information; do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.

3

THE COURT: And do you also understand that what I ultimately give you may be different from any estimate that your lawyer may have given you?

THE DEFENDANT: Yes, sir.

Silva also confirmed that the recommendations made by the government in its agreement were not binding on the district court. And Silva acknowledged that he understood that he would not be allowed to withdraw his pleas of guilty if he received a more severe sentence than what the government recommended.

THE COURT: Do you understand that the Court is not required to go along with any recommendations that the government has agreed to make on your behalf?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if I sentence you to something that's worse than what the government recommends, you cannot use that as a reason to take back your guilty plea?

THE DEFENDANT: Yes.

After Silva acknowledged a second time that the district court was unaware of Silva's actual sentence but that he would face minimum sentences of 10 years each for his conspiracy and methamphetamine offenses and a minimum sentence of 5 years for his cocaine offense, the district court accepted Silva's pleas of guilty.

Silva's presentence investigation report provided a sentencing range of 235 to 293 months of imprisonment based on a total offense level of 38 and a criminal history of I. The presentence report grouped Silva's offenses and provided a base

offense level of 36, which it increased by two levels for his possession of a firearm. U.S.S.C. § 2D1.1(b)(1). The report also increased Silva's offense level by three levels for his role as a manager or supervisor of the conspiracy, *see id.* § 3B1.1(b), and subtracted three levels for his acceptance of responsibility, *see id.* § 3E1.1.

Silva objected to the presentence report and opposed the sentence enhancements and the denial of safety valve relief. The government moved the district court to depart downward to an offense level of 35, U.S.S.G. § 5K1.1, which resulted in Silva receiving an adjusted sentencing range of 168 to 210 months of imprisonment. The government requested that the district court sentence Silva to 176 months of imprisonment.

At sentencing, Silva withdrew his objections to the presentence report. The district court adopted the findings in the presentence report and accepted its calculation of Silva's advisory sentencing range. The district court also granted the motion of the government to depart downward by 3 levels and calculated Silva's sentencing range using an adjusted base offense of 35. The district court sentenced Silva to three concurrent sentences of 170 months of imprisonment, credited him for 20 months and 19 days he had served in a state court, and dismissed the remaining charge against him.

Silva argues, for the first time, that his plea was not knowingly and voluntarily entered because he was unaware that his sentence would be enhanced

5

for his possession of a firearm. Because Silva did not challenge the validity of his pleas of guilty in the district court, we review for plain error. *United States v. Sosa*, 782 F.3d 630, 636 (11th Cir. 2015). To satisfy that standard, Silva must prove that an error occurred that is plain and that affected his substantial rights. *See id.* Because Silva pleaded guilty, he "must show a reasonable probability that, but for the error, he would not have entered [his] plea[s]." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

A plea of guilty is valid so long as it is entered voluntarily, knowingly, and intelligently. *See Sosa*, 782 F.3d at 636. For a guilty plea to be knowing and voluntary, the district court must address three "core concerns," which are that the defendant is not being coerced to plead guilty, that he understands the nature of the charges against him, and that he knows and understands the consequences of changing his plea from not guilty to guilty. *United States v. Symington*, 781 F.3d 1308, 1314 (11th Cir. 2015). The failure of the district court to notify the defendant of a potential guideline enhancement does not affect the validity of his guilty plea so long as he is aware that consideration of the Sentencing Guidelines could affect his sentence. *See United States v. Bozza*, 132 F.3d 659, 661–62 (11th Cir. 1998). As explained in the advisory committee notes to Federal Rule of Criminal Procedure 11, "the district court [must] inform a defendant that the court is required to consider any applicable guidelines" to "assure[] that the existence of

6

guidelines will be known to a defendant before a plea of guilty . . . is accepted," yet because it is "impracticable, if not impossible, to know which guidelines will be relevant prior to the formulation of a presentence report and resolution of disputed facts, [Rule 11(c)(1)] does not require the court to specify which guidelines will be important or . . . might prove to be significant." Fed. R. Crim. P. 11(c)(1) advisory committee's note to 1989 amendment.

We find no error, plain or otherwise, in the decision of the district court to accept Silva's pleas of guilty. Silva does not argue that he was coerced, induced, or tricked into pleading guilty, nor does he dispute that he understood the crimes to which he was pleading guilty. *Symington*, 781 F.3d at 1314. Silva knew that he could receive maximum statutory sentences of 40 years and of life imprisonment for his crimes. And the record establishes that Silva knew that the guidelines could affect his sentence. *See Bozza*, 132 F.3d at 661–62. Silva acknowledged that the guidelines governed the calculation of his sentencing range, that the district court could not determine his sentencing range without additional information, and that the application of the guidelines could result in a sentencing range different from the range estimated by his attorney. Silva also was aware that he could not withdraw his plea if he received a greater sentence than he anticipated. The failure of the district court to notify Silva that his guideline range might be enhanced for possessing a firearm did not affect the validity of his guilty plea. *See id.*; Fed. R.

7

Crim. P. 11 advisory committee's note (1989). Silva entered his pleas of guilty knowingly and voluntarily.

When the district court asked the prosecutor at the plea hearing whether there were any enhancements, the context made clear that the district court was asking about statutory, not guideline, enhancements. It would have been premature to discuss guideline calculations before the preparation of the presentence report. And the district court later made sure that Silva understood that the guidelines could affect his sentence.

Even if we were to assume that a plain error occurred, Silva cannot establish that the error affected his substantial rights. Silva does not argue that, had he known that he was subject to the firearm enhancement, he would not have pleaded guilty and proceeded to trial. *See Dominguez Benitez*, 542 U.S. at 83. In any event, the application of the firearm enhancement did not result in a penalty greater than what Silva expected. The two-level enhancement produced an advisory guideline range that was well below Silva's maximum statutory penalties. And ultimately, the enhancement did not affect Silva's sentence. At sentencing, the district court departed downward three levels, which eliminated the two-level enhancement he received for possessing a firearm. The district court calculated an adjusted sentencing range—and imposed a sentence—significantly below than the low end of Silva's advisory guideline range.

We **AFFIRM** Silva's convictions.