[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10725
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20458-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOE VONZO READON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2021)

Before LUCK, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Joe Readon appeals the district court's denial of his motion to withdraw his plea of guilty to being a felon in possession of a firearm and ammunition.

I.

Readon was indicted on two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one count of possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He was 60 years old at the time and faced a 15-year mandatory minimum sentence for the felon in possession charge. After initially planning on going to trial, Readon decided to plead guilty to the felon in possession charge in exchange for the government dismissing the drug charges and recommending the mandatory minimum sentence.

A.

At the plea colloquy, the district court discussed in detail with Readon his physical and mental health issues, his familiarity with and understanding of the proceedings and plea agreement, the nature of the charges, the consequences of pleading guilty, the mandatory minimum sentence, whether his counsel had answered all his questions and whether he was satisfied with her representation of him, and the factual proffer. As to Readon's health issues, the court initially confirmed that he could hear everything (he has some hearing problems) and then

2

confirmed that none of his other health issues interfered with his ability to understand the guilty plea and the proceedings. Readon said he understood.

The court also confirmed that Readon had read the entire plea agreement and that he understood it. Initially, Readon said he had read it the day before, that he had no problems reading or understanding it, and that he "understand[s] perfectly." Later during the hearing, however, he said he had only skimmed it. In response, the court called for a break in the proceedings for Readon to read the five-page plea agreement with his attorney. After a seven-minute break, Readon confirmed that he had read the agreement "completely" and again stated that he "understood it perfectly."

Throughout the hearing, the court explained to Readon the nature of the charges, as well as the various parts and consequences of the plea agreement. At each instance Readon, sometimes after conferring with counsel, confirmed that he understood. To ensure that Readon understood the nature of the charges, the court read the indictment word for word. And Readon confirmed that he had received the indictment and "had a full opportunity to discuss the charges and the case in general" with his attorney.

The court went over in detail all of the rights that Readon was waiving by pleading guilty and discussed the mandatory minimum sentence he was subject to. The court confirmed that Readon was entering the plea voluntarily, asking him

3

twice whether anyone had forced or threatened him to enter it.  Both times Readon said no.

At one point during the colloquy, the court asked Readon if he understood that parole had been abolished, and Readon said he had not known that.  In response, the court provided a break in the proceedings so that Readon's counsel could explain to him that there was no parole.  After counsel did so, the court asked Readon if he had fully discussed the issue of parole having been abolished and if he understood that it had.  Readon answered yes to both questions.

More generally, the court confirmed that Readon's counsel, Ana Davide, had answered all of her client's questions and that Readon was satisfied with her performance.  Repeatedly, Readon said that Davide had answered all his questions. He also stated that he was "fully satisfied" with her representation and the advice she had given him.  Further, after Davide explained to the court the evidence she had discussed with Readon, he confirmed that what she said was "accurate." Specifically, he confirmed that they "had a full discussion relating to the elements of the offense, any possible defenses, and a full review of the discovery or the information the Government provided."  At no point did Readon suggest that Davide's performance had been inadequate or that she had failed to explain anything to him.

4

Finally, the court confirmed Readon's agreement to the factual proffer, after it allowed Readon to amend a part of the proffer to suit him. Initially, the factual proffer included information about Readon selling drugs to undercover police officers. He objected to including that information and instead wanted that part of the proffer limited to information about a search of his residence having turned up drugs and guns. After everyone agreed to that change, the part of the proffer about the drug buys was marked out, and Readon initialed next to the change. He then confirmed to the court that he "understood every word" of the updated proffer and that the facts in it were true.

The court accepted Readon's guilty plea, finding him "fully competent and capable of entering his informed guilty plea" and finding that he was "aware of the nature of the charge and the consequences of his plea." The court also found that the plea was "a knowing and voluntary plea that is supported by an independent basis in fact, that does contain each of the essential elements of the offense."

B.

Soon after entering his guilty plea, Readon decided he wanted to withdraw it. He said that his counsel, Davide, had not adequately explained the plea agreement to him and had forced him to enter the plea. Because of that, Davide withdrew and replacement counsel was appointed. Replacement counsel filed a motion to withdraw the guilty plea, and the court held a hearing on it.

5

At the hearing, Readon testified that Davide had not fully reviewed the evidence with him, had not fully explained to him the consequences of pleading guilty, and had pressured him into pleading guilty. Specifically, he testified that she met with him for only an average of ten minutes at a time, and that she had never prepared for a trial, even though he had always told her that he wanted to go to trial. Because of that, he felt he had no choice but to plead guilty because the alternative was going to trial with unprepared counsel. He also claimed that she had failed to sufficiently explain the sentencing guidelines to him and that she told him the court may sentence him to seven or eight years. The reason he had not raised any of these problems at his plea colloquy, he said, was because he did not want to "embarrass" Davide "face to face."

Davide also testified at the hearing, contesting Readon's version of events. She denied that any of her meetings with Readon had lasted only ten minutes. She testified that she had met with him ten times, with some of the meetings lasting up to an hour. She also denied ever telling Readon he could be sentenced to seven or eight years.

The court denied Readon's motion in a ruling from the bench, finding that Readon had received close assistance of counsel and had pleaded guilty knowingly and voluntarily. In doing so, it meticulously went over the plea colloquy transcript, noting the many instances in which the court had explained something

6

to Readon and he had confirmed that he understood what was explained.  The court

pointed out, and reiterated the point several times, that:

> [T]he one piece of testimony or argument that [it] did not hear today is
> that, in looking at the five-page Plea Agreement, that consists of 13
> paragraphs, [Readon has] not pointed the Court to one paragraph or one
> page that [he] did not understand.  In fact, every part of the Plea
> Agreement was reviewed with [him] by the Court at the time of the plea
> colloquy.

The court further noted that Readon's testimony was belied by the record,

including the statements he made at the plea colloquy.  It found that Readon's

hearing testimony was not credible.  The court also pointed out that in response to

questioning during the colloquy Readon had stated that he was satisfied with his

counsel's performance.

## II.

We review only for abuse of discretion a district court's denial of a motion

to withdraw a guilty plea and we will reverse "only if [the decision was] arbitrary

or unreasonable."  United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002).

"The good faith, credibility, and weight of a defendant's assertions in support of a

motion to withdraw a guilty plea are issues for the [district] court to decide."

United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006) (cleaned up).

A defendant may withdraw a guilty plea before the court imposes a sentence

if he can show a "fair and just reason" for the withdrawal.  Fed. R. Crim. P.

11(d)(2)(B).  In determining whether to allow withdrawal, the court may consider

7

the totality of the circumstances, including whether: (1) close assistance of counsel was available; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) the government would be prejudiced if the defendant were allowed to withdraw his plea. United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988).

The district court did not abuse its discretion in denying Readon's motion. It correctly pointed out that his contentions were belied by the record and the statements he made under oath at the plea colloquy, and it discredited the testimony he gave at the hearing on the motion to withdraw his plea. Those credibility determinations were the district court's to make, and we see no abuse of discretion in them. See Brehm, 442 F.3d at 1298.

On the first factor, the district court did not abuse its discretion in finding that Readon received close assistance of counsel.[1] At the plea colloquy, Readon repeatedly told the court that Davide had answered all of his questions, he

---

[1] Readon concedes that he had close assistance of counsel, but he asserts that counsel was ineffective. To the extent he means to raise an ineffective assistance of counsel claim under the Sixth Amendment, we reject it as the district court did. See Doc. 73 at 197–98; United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (noting that we generally will not consider an ineffective assistance of counsel claim on direct appeal, but that we will consider it if the district court entertained the claim or the record is sufficiently developed). As the district court pointed out, Readon's testimony about Davide's alleged ineffectiveness was not credible. In light of that, we see no deficiency in her performance. Nor do we discern any prejudice. The basis of Readon's claim is that his counsel did not adequately explain the plea agreement. But the agreement and its consequences were thoroughly explained by the district court at the plea colloquy, so any potential prejudice was cured. And the district court did not credit his testimony that Davide told him he could be sentenced to as little as seven or eight years imprisonment.

confirmed her lengthy description of the evidence she had discussed with him, and he said that he was satisfied with her performance.

His explanation for saying those things at the plea colloquy, and for not otherwise criticizing Davide's performance, is that he did not want to embarrass her in person. The district court did not clearly err in disbelieving that explanation. It was up to Readon to inform the court of his dissatisfaction with Davide when the court specifically asked him about it, instead of lie about that, if his later story were to be believed. It is also worth mentioning that Readon had no reservations about speaking up for himself at both the plea colloquy and the motion hearing. Most notably, at the motion hearing Readon interrupted Davide's testimony three times, including once to sarcastically say, "Oh, here we go," in response to her testifying that she had discussed the case with him. In light of that behavior, his claim that he was too polite and courteous to embarrass her during the colloquy strains credulity.

On the second factor, the district court did not abuse its discretion in finding that Readon's plea was knowing and voluntary. To be knowing and voluntary, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Symington, 781 F.3d 1308, 1314 (11th Cir. 2015).

9

Each of those requirements was satisfied.  Readon told the court, twice, that nobody had forced or threatened him to enter the plea agreement.  The court also made sure that he understood the nature of the charges by reading the indictment to him word for word.  As for the consequences of pleading guilty, the court allowed Readon time to read the plea agreement, and he repeatedly told the court he understood the agreement and its various parts, each of which the court went over with him.  Readon even went so far as to tell the court, twice, that he understood the plea agreement "perfectly."  And if that weren't enough, Readon actually did speak up when he didn't understand something about parole, and he did object (successfully) to part of the factual proffer.  He obviously understood the plea agreement, the proceedings, and how to speak up if he didn't understand or wished to object.

Because Readon made all of his "statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false," Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (quotation marks omitted), which he has not done.  The district court did not abuse its discretion in denying Readon's motion to withdraw his guilty plea.

**AFFIRMED.**

10