**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 23-12457

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JEFFERY DEROY LEWIS,
    a.k.a. 2500,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:21-cr-00008-SDG-WEJ-1

———————————————

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

LUCK, Circuit Judge:

While serving a life sentence for felony murder, Jeffery Lewis conspired to smuggle drugs into a Georgia state prison. He was indicted on one count of conspiracy to possess with the intent

to distribute controlled substances—marijuana and methamphetamine—and one count of conspiracy to commit bribery. Lewis accepted a plea agreement in which he agreed to plead guilty to the controlled substances charge and the government agreed to drop the bribery charge and recommend imprisonment concurrent with his state sentence. At his change-of-plea hearing, Lewis admitted that he was guilty of the drug conspiracy but denied that it involved methamphetamine. When he later realized that the district court could still sentence him based on his relevant conduct involving methamphetamine, he repeatedly tried to withdraw his guilty plea. The district court denied Lewis's motions, found that his conspiracy involved methamphetamine, and imposed a consecutive sentence.

Lewis now appeals the district court's acceptance of his guilty plea and its denial of his motions to withdraw it. He argues that the district court plainly erred in accepting his plea because (1) it was "counter to the justice system," (2) he didn't fully understand the consequences of pleading guilty, and (3) he wasn't competent to plead guilty. He also contends that, given the totality of the circumstances, the district court abused its discretion in denying his motions to withdraw his plea. After careful review, and with the benefit of oral argument, we affirm.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lewis is serving a life sentence (plus fifteen years) in Georgia state prison for felony murder. During the first five years of his incarceration, he committed and pleaded guilty to five more state-

law offenses:  three counts of possessing a prohibited cell phone, one count of possessing marijuana, and one count of obstructing a law enforcement officer.  He was sentenced to time served for each of those offenses.

His next offenses were federal.  Eight years into his life sentence, Lewis involved himself in a scheme to smuggle drugs into prison through a bribed correctional officer.  He was indicted on two counts.  The first count charged him with conspiracy to possess and distribute controlled substances—methamphetamine and marijuana.  *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)–(D), 846.  The second charged him with conspiracy to bribe a state agent.  *See* 18 U.S.C. § 666(a)(2).  He pleaded not guilty at his initial appearance.

*The Competency Evaluations*

Lewis moved for and received a competency evaluation. The first evaluation was inconclusive, but the second deemed him competent to stand trial.  To be sure, Lewis scored very poorly on an assessment designed to measure his understanding of the charges against him—"significantly lower," in fact, "than the group average obtained even by individuals who are incompetent."  But since he otherwise "did not display any genuine . . . impairment," the second evaluation concluded that he was probably making an "intentional effort to portray significant intellectual deficits."  It therefore determined that he was malingering.  Based on the results of both evaluations, Lewis waived his competency hearing, and the district court found him competent to stand trial.

*The Plea Agreement*

On September 9, 2022, Lewis changed his plea and signed a written plea agreement with the government. *See* Fed. R. Crim. P. 11(c)(1)(A)–(B). The government agreed to dismiss the bribery count, while Lewis agreed to plead guilty to the drug-conspiracy count. The parties also agreed to recommend that Lewis be sentenced to 169 months' imprisonment, to be served concurrently with his state sentence.

The agreement included a waiver of rights and acknowledgment of penalties. Lewis acknowledged that he faced a maximum sentence of twenty years, that the court could sentence him to that maximum, that the court would apply the United States Sentencing Guidelines to his case and could therefore consider "relevant conduct" even if it connected to "dismissed counts," and that the court could refuse to accept any sentencing recommendations recited in the agreement or discussed between the parties. Lewis affirmed that, even if the district court rejected any of the recommendations in the agreement, he couldn't withdraw his plea.

Annexed to the agreement was Lewis's signed statement. In it, he confirmed that no one had coerced him into pleading guilty, that he understood the charges against him and the terms of the agreement, that he'd reviewed "every part" of the agreement with his attorney, and that he "voluntarily" accepted it. He also avowed that he was "fully satisfied with the representation provided" by his attorney.

*The Change-of-Plea Hearing*

The district court held a change-of-plea hearing the same day. Lewis apparently arrived in some visible discomfort; "given the way h[e] [was] acting," the district court expressed "a little concern[]" about whether Lewis was "with us today." Lewis explained that he'd been prescribed drugs for his depression and high blood pressure and that the arthritis in his left leg had flared up. He added that he had "a lot on [his] mind" and, before agreeing to proceed with his plea, looked around the courtroom "to see if [he] had somebody back there." Still, he confirmed that he hadn't taken any unprescribed drugs in the last week and that he "underst[ood] what[] [was] going on" notwithstanding his medication, his leg pain, and the things on his mind.

During the colloquy, Lewis informed the court that he understood the rights he was waiving. And despite his responses to the competency evaluation, he even reminded the court that he'd asked about a speedy-trial issue during a previous proceeding. He agreed that he was "pleading guilty . . . because [he was] guilty." Lewis's attorney, for his part, reported that he'd had a "very cogent conversation" with Lewis an hour and a half before the change-of-plea hearing and that Lewis had "underst[ood] everything . . . and answered questions." The attorney stated that he had "no concerns or doubts whatsoever about his client's competency to plead guilty."

The government then recited the elements of the drug-conspiracy count to which Lewis was pleading guilty. It stated that it

could prove that, during the period charged in the indictment, Lewis had agreed with at least one other person to possess and distribute a controlled substance. The specific substance wasn't an element of the offense, but Lewis's conspiracy had involved methamphetamine and marijuana, which meant that he faced a maximum penalty of twenty years. *See* 21 U.S.C. § 841(b)(1)(C).

Lewis told the court that he understood the charge and that he could receive a twenty-year sentence but objected that he had "nothing to do with any methamphetamine"—just marijuana. The district court asked Lewis's attorney whether Lewis admitted that methamphetamine was a controlled substance; the attorney clarified that there was "no objection to that." Lewis then admitted that he had indeed agreed with at least one other person to possess and distribute a controlled substance and reiterated that he was in fact guilty of the offense charged. He told the court that he understood that he couldn't withdraw his plea even if he received a harsher sentence than his attorney had told him to anticipate and that his sentence would depend on the presentence report, subject to the twenty-year maximum.

For good measure, the court asked Lewis's attorney whether he'd spoken to Lewis about the guidelines and how they might apply in Lewis's case. The attorney said that he had. The court told Lewis that no one could know for sure how the guidelines would apply to his case without seeing the presentence report, and Lewis said he understood.

The court also went over Lewis's plea agreement with him. It explained that, although it had no objection to the agreement, it wasn't bound by the agreement and could give him a sentence higher than the one the parties had agreed to recommend. Lewis said that he understood. He also stated that he understood that the court could run his sentence consecutively to, instead of concurrently with, his state sentence, depending on the contents of the presentence report and the parties' presentations at Lewis's sentencing hearing.

As the change-of-plea hearing concluded, Lewis told the court that he'd discussed his case with his attorney, that he was satisfied with his representation, that there was nothing he wanted to clarify with his attorney in private, and that there was nothing the court or the government had said that he didn't understand. No one was forcing him to plead guilty. For the third time, he confirmed that he intended to plead guilty because he was in fact guilty. He then pleaded guilty. Having "closely observed [Lewis] during th[e] hearing," the district court found that Lewis's plea was "knowingly, voluntarily, and competently made on the advice of experienced and informed counsel and [had] a basis of fact that comprehend[ed] each and every element of the charge to which [Lewis was] pleading." It therefore accepted his plea.

### Lewis's Motions to Withdraw the Plea

About three months after the change-of-plea hearing, Lewis had a change of heart. Even though he was still represented by his appointed attorney, he sent a pro se letter to the district court

asking to withdraw his guilty plea, complaining that his attorney had never told him that he could still be "convicted of meth charges." Shortly after the letter arrived, Lewis's attorney moved to withdraw, citing "irreconcilable differences" related to post-plea motions.

The district court held another hearing. Lewis's attorney explained that Lewis wanted him to withdraw because he'd "told [Lewis] that there [wa]s still a risk that the presentence report could find that [Lewis] should be sentenced for possessing with intent to distribute methamphetamine and that it's a lower burden of proof[.]" He understood that Lewis "fe[lt] shortchanged," but stated that he thought Lewis "knew beforehand"—before the change-of-plea hearing—"that [the district court] still ha[d] the authority to sentence [Lewis] as if he possessed methamphetamine with the intent to distribute" it.

Lewis heatedly disagreed. The thrust of his objection to the plea was that it made "no sense for [him] to [have] come in the courtroom and plead[ed] guilty to marijuana," only to "still risk being prosecuted for a higher offense" at sentencing. He felt "blindsided" by the realization that, in pleading guilty, he'd exposed himself to "the chance of being found guilty of a higher offense." He accused his attorney of "swindling" him by not warning him that he could be sentenced for methamphetamine "until after the plea." After that discovery, he'd "lost faith" in his attorney and agreed that his attorney should withdraw. The district court construed two

oral motions from Lewis's explanation:  a motion to withdraw the guilty plea and a motion to withdraw his attorney.

The district court denied both oral motions, explaining that Lewis couldn't file anything himself while he was represented by an attorney.  It clarified that Lewis wasn't going to be "convicted of methamphetamine."  It also reminded Lewis of what they'd discussed at the change-of-plea hearing:  that the court wasn't bound to follow any sentencing recommendations, that the probation office would prepare a presentence report, and that the court would determine Lewis's sentence based on that report, not the plea agreement or the parties' recommendations.  Lewis said he remembered all that.  After the hearing, the district court denied the attorney's motion to withdraw too.

### The Sentencing Hearing

The district court set Lewis's sentencing hearing for July 2023.  In advance of the hearing, the probation office prepared a presentence investigation report, which largely tracked the government's recitation of the facts at the change-of-plea hearing.  According to the report, Lewis had conspired to smuggle controlled substances into prison.  But the parties disputed whether there was evidence tying Lewis to methamphetamine.  Through his attorney, Lewis argued that there wasn't, while the government contended that it had text messages and photographs connecting Lewis to around 112 grams of methamphetamine.  Separately, Lewis sent the court a second pro se letter asking to withdraw his plea and to appoint him a new attorney.

At the sentencing hearing, the district court credited the text messages and photographs, finding that they established by a preponderance of the evidence that Lewis had conspired to possess and distribute methamphetamine, in addition to marijuana. After accounting for Lewis's acceptance of responsibility, the district court concluded that Lewis's total offense level was twenty-eight, his criminal history was a category six, and the applicable guideline range was 140 to 175 months' imprisonment.

Consistent with the plea agreement, the government asked the district court to sentence Lewis to 169 months, to be served concurrently with his state sentence. But the court sharply disagreed, noting that Lewis's previous time-served sentences for possessing contraband hadn't deterred him from joining a smuggling conspiracy:

> When we look at the need for deterrence here, and specifically specific deterrence . . . I don't know that the need could be any higher.
>
> [ . . . ]
>
> [I]n essence, [Lewis has] received no sentence for [his] previous criminal acts of possessing prohibited items in the prison system.
>
> [ . . . ]
>
> It's extremely troubling to me that the government signed a plea agreement recommending that this sentence run concurrent to felony murder. . . . I want

> th[e] message to be loud and clear that [it] is counter to the justice system to allow a defendant who is serving such a lengthy prison term and who has committed this crime of possessing and smuggling prohibited items in the prison system . . . to effectively receive no sentence at all for what is such a serious crime[.]

It sentenced Lewis to 150 months—less than the government's recommendation—but ran the sentence consecutively to his state sentence.

Finally, the district court declined to consider Lewis's pro se letter because he was "still with counsel," and the "issue of whether counsel should be withdrawn [had been] resolved in a prior hearing already."

Lewis appeals the acceptance of his plea and the denial of his motions to withdraw it.

## II.  DISCUSSION

As we'll explain, the district court didn't plainly err when it accepted Lewis's guilty plea and didn't abuse its discretion when it denied Lewis's motions.

### *The Acceptance of the Plea*

Federal Rule of Criminal Procedure 11 "requires a district court, before accepting a guilty plea, to 'inform the defendant of, and determine that the defendant understands[,] . . . the nature of each charge to which the defendant is pleading.'" *United States v. Wright*, 95 F.4th 1380, 1383 (11th Cir. 2024) (quoting Fed. R. Crim. P. 11(b)(1)(G)). "The purpose of this nature-of-the-charge rule is to

'ensure that a defendant's guilty plea is knowing.'" *Id.* (quoting *United States v. Lopez*, 907 F.2d 1096, 1099 (11th Cir. 1990)). After all, "[a] guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (first citing *Brady v. United States,* 397 U.S. 742, 748 (1970); then citing *Galbraith v. United States,* 313 F.3d 1001, 1006 (7th Cir. 2002)). Rule 11 also requires the district court to determine that there's a factual basis for a guilty plea before accepting it. *Wright*, 95 F.4th at 1384.

Lewis argues that the district court erred in accepting his guilty plea because (1) it found part of the plea agreement counter to justice, (2) he wasn't fully informed of the consequences of pleading guilty, and (3) he wasn't competent when he entered his plea. "We review for plain error when," as here, "a defendant . . . fails to object in the district court to a claimed Rule 11 violation[.]" *United States v. Rodriguez*, 751 F.3d 1244, 1251 (11th Cir. 2014). That means Lewis must show that "there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Moriarty*, 429 F.3d at 1019 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732).

All three of Lewis's attacks on his plea turn on whether the district court erred by accepting a plea that, in some way, wasn't

knowing and voluntary.  Since Lewis's guilty plea was knowing and voluntary, his arguments fail at the first element of the plain-error analysis—that is, they fail to identify an error.

### The Concurrent-Sentence Recommendation

First, Lewis argues that the district court erred by not telling him at the change-of-plea hearing that it would reject the parties' concurrent-sentence recommendation as "extremely troubling," "counter to the justice system," and "mind boggling."  By not doing so, he contends, the court "misinformed [him] about the likely consequences of his guilty plea" and denied him an opportunity to withdraw it.

Lewis's argument is premised on the district court knowing at the change-of-plea hearing that it would reject the concurrent-sentence recommendation.  But the record doesn't support Lewis's premise.  The district court rejected the concurrent-sentence recommendation because of Lewis's state-law convictions for possessing contraband, for which Lewis was repeatedly sentenced to time served.  Because the time-served sentences failed to deter Lewis from conspiring to possess and distribute controlled substances, the court concluded that a concurrent sentence also would be ineffective.  Lewis's state-law convictions were in the presentence report; that report hadn't been prepared at the time of the change-of-plea hearing, and there's no indication the district court knew about those convictions at the time of the plea.  There's no reason, then, to think that the district court had decided at the hearing that it would reject the concurrent-sentence recommendation.

The district court didn't err by not telling Lewis something it didn't know.

And Lewis knew that the district court wasn't bound by the government's concurrent-sentence recommendation. Where, as here, a plea agreement specifies that the government will "recommend . . . that a particular sentence or sentencing range is appropriate[,] . . . such a recommendation or request does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). As Lewis knew from his plea agreement and the change-of-plea hearing, the district court would sentence him based on the presentence report and the presentations at the sentencing hearing and remained free to reject the parties' recommendations. He knew he could be incarcerated for up to twenty years and that he had no right to withdraw his plea if he received a sentence harsher than he expected. He may rue the consequences of his plea, but they couldn't have come as a surprise.

Considering Relevant Conduct Involving Methamphetamine

Second, Lewis argues that the district court erred by failing to tell him that he could be sentenced for conspiring to possess and distribute methamphetamine and not just marijuana. In essence, Lewis believes that he'd effectively conditioned his plea on the district court not considering his relevant conduct involving methamphetamine. He blames the district court for not correcting that misunderstanding.

The record shows, however, that Lewis was thoroughly informed. At the change-of-plea hearing, the government identified the elements of the charge, the two controlled substances to which

it could connect Lewis—methamphetamine and marijuana—and the maximum sentence prescribed by section 841(b)(1)(C): twenty years. Lewis then told the court that he understood the charge against him and ultimately pleaded guilty to the count as charged in the indictment.

Lewis's attorney later explained that he believed Lewis "knew beforehand" that the court could consider the methamphetamine in applying the guidelines. His belief was borne out by the plea agreement and Lewis's testimony at the change-of-plea hearing. Lewis agreed that his sentence would depend on how the judge evaluated his presentence report and applied the guidelines. And he affirmed that he'd reviewed "every part" of the plea agreement, which explained that, in applying the guidelines, the court could consider all "relevant conduct." In other words, at each step of the process, Lewis was told (and said he understood) that everything was still on the table, including the methamphetamine.

## Lewis's Competency to Plead Guilty

Third, Lewis argues that his plea wasn't voluntary. Specifically, he contends that his "history of mental health issues, along with his . . . mental state, his state of pain, and his confusing actions, all [were] signs that [he] was not . . . capable of understanding what the consequences of his plea would be," or "intelligently aware of what was happening in court."

"[T]he standard of 'competence' required to plead guilty is the same standard used by courts to determine whether an individual is competent to stand trial[.]" *Rodriguez*, 751 F.3d at 1252

(quoting *Godinez v. Moran,* 509 U.S. 389, 396–98 (1993)).  That is, we ask "'whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"  *Id.* (quoting *Godinez,* 509 U.S. at 396–98).  "[A]n allegation of . . . mental disability" invalidates a plea only if the disability was "so debilitating that [the defendant] was unable to consult with [his] lawyer and did not have a rational and factual understanding of the proceedings."  *Id.* (quoting *Bolius v. Wainwright,* 597 F.2d 986, 990 (5th Cir. 1979)).  Unless a defendant is unable to assist his attorney or understand the charges against him, "evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence[.]"  *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009) (citing *Medina v. Singletary,* 59 F.3d 1095, 1106 (11th Cir. 1995)).

The record shows that Lewis was competent to enter a guilty plea.  The second competency evaluation ordered by the district court found Lewis competent to proceed to trial and concluded that he was probably malingering.  It's true that at the change-of-plea hearing Lewis said he took medication for depression and complained his arthritis was flaring up.  Nevertheless, he assured the court he "underst[ood] what [was] going on."  He did look around the courtroom while the court was addressing him, but he explained he was looking to see if anyone had come to the hearing to support him.  Lewis's attorney described him as "cogent" and "competent," and Lewis even recalled raising a speedy-

trial issue in an earlier proceeding. He asked no questions of the court during the hearing and confirmed at the end there was nothing the court or the government had said that he wanted to clarify. After "closely observ[ing]" Lewis, the district court saw nothing calling his competency into doubt. Neither do we.

*The Denials of the Motions to Withdraw the Plea*

Lastly, Lewis argues that, based on the totality of the circumstances, the district court abused its discretion by denying his motions to withdraw his guilty plea before sentencing. We review for abuse of discretion when a district court denies a motion to withdraw a guilty plea. *United States v. Symington*, 781 F.3d 1308, 1312 (11th Cir. 2015) (citing *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006)).

"There is no absolute right to withdraw a guilty plea." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988)). Instead, the defendant must show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine whether the defendant has shown a "fair and just reason for withdrawal," the district court may consider the "totality of the circumstances," including, "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 471–72 (citation modified). Where the defendant received close assistance of counsel and

entered his plea knowingly and voluntarily, we need not address the third and fourth factors. *See, e.g.*, *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). A district court's denial of a motion to withdraw a plea is an abuse of discretion only if the denial is arbitrary or unreasonable. *Buckles*, 843 F.2d at 471.

Here, after considering the first two factors, there was no abuse of discretion in denying Lewis's motions to withdraw his plea. First, Lewis had the close assistance of counsel. When Lewis signed the plea agreement, he affirmed that he'd discussed the indictment and the agreement with his attorney and that he was satisfied with his attorney's services. Lewis met his attorney before the change-of-plea hearing. They had a "very cogent conversation," and the attorney advised Lewis about the guidelines. At the end of the hearing, Lewis reported that he'd had enough time to speak with his attorney and repeated that he was satisfied. The district court was entitled to credit this testimony notwithstanding Lewis's later dissatisfaction with the consequences of his plea. *See United States v. Mullings*, 166 F.4th 939, 948 (11th Cir. 2026) ("The court found Mullings's testimony at the plea hearing more credible than his 'self-serving, after-the-fact testimony' from the hearing on the motion to withdraw his plea. Given . . . the deference afforded to the district court's credibility determinations . . . the district court did not abuse its discretion [in denying the motion]." (citation modified)). Lewis was "ably and professionally represented." *Id.*

Second, Lewis entered his plea knowingly and voluntarily. As we explained, Lewis plainly understood the terms of his plea

agreement and the consequences of pleading guilty, despite his objections on appeal. *See id.* at 949. And both in the plea agreement and during the plea hearing, Lewis confirmed that he hadn't been forced to plead guilty. Nor had he been promised anything in exchange for his plea (except through the plea agreement). He told the district court that his plea was voluntary and, over and over, that he was pleading guilty because he was guilty. We presume—especially considering this record—that his statements were true. *See Medlock*, 12 F.3d at 187.

Because the first and second *Buckles* factors weighed against withdrawing the plea, we needn't consider the third and fourth factors. *See Gonzalez-Mercado*, 808 F.2d at 801. Based on the totality of the circumstances, the district court did not abuse its discretion when it denied Lewis's motions to withdraw his guilty plea.

### III.  CONCLUSION

The district court didn't plainly err when it accepted Lewis's guilty plea. Nor did it abuse its discretion when it denied his motions to withdraw that plea. Lewis failed to show otherwise.

**AFFIRMED.**